IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JESUS J. MALDONADO,

      Plaintiff,

v.                                                                                                                       CIV 16-0392 KBM

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

      Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse and Remand for Rehearing with Supporting Memorandum (*Doc. 22*), filed December 16, 2016. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *Doc. 12*. Having reviewed the parties' submissions, the relevant law, and the relevant portions of the Administrative Record, the Court will deny the Motion.

**I.**    **Introduction**

Plaintiff is a 23 year old man with no physical impairments who works as his mother's paid caregiver (albeit at levels that do not reach substantial gainful activity). He drives, watches TV, plays video games, and cares for his children without assistance. *See AR* at 30-36. Yet, Plaintiff claims that he is disabled due to mental impairments. The Social Security Administration disagreed, and denied him benefits. Plaintiff now appeals to this Court, asserting that decision was in error because the Administrative

---

[1] Effective January 20, 2017, Nancy A Berryhill became the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A Berryhill is therefore substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

Law Judge ("ALJ") that reviewed his claim failed to account for restrictions imposed by three different medical consultants. As further explained below, however, the ALJ's analysis of these opinions conformed to the relevant regulations and case law. Therefore, no error occurred, and this Court affirms the ALJ's decision.

## II.    Procedural History

Plaintiff filed an application with the Social Security Administration for supplemental security income under Title XVI of the Social Security Act on October 24, 2013. *AR* at 248-253.[2] Plaintiff alleged a disability onset date of January 1, 2000, due to "learning disability, depression, anger problems, ADHD, panic attacks, anxiety attacks, [and] sleeping problems." *AR* at 248, 146.

The agency denied Plaintiff's claims initially and upon reconsideration, and he requested a hearing. *AR* at 120, 141, 157. After a *de novo* hearing, ALJ Eric Weiss issued an unfavorable decision on December 17, 2015. *AR* at 6-18. Plaintiff submitted a Request for Review of ALJ Weiss' decision to the Appeals Council, which the Council denied on March 3, 2016. *AR* at 1-3. As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

---

[2] Documents 15-1 through 15-23 comprise the sealed Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

2

§ 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 416.920(a)(4); *see Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

At Step One of the process, the ALJ recognized that Plaintiff's earnings for taking care of his mother did not rise to the level of substantial gainful activity. *AR* at 11. At Step Two, he determined that Plaintiff suffers from the severe impairments of "Affective Disorder; Organic Brain Syndrome; Depressive Disorder; Anxiety Disorder; Learning Disorder; Attention Deficit Hyperactivity Disorder (ADHD); Communication Disorder [and] Borderline Intellectual Functioning." *AR* at 11. At Step Three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not meet or medically equal the regulatory "listings." *AR* at 11-13.

When a claimant does not meet a listed impairment, the ALJ must determine his residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4). RFC is a multidimensional description of the work-related abilities a plaintiff retains in spite of his medical impairments. 20 C.F.R. § 416.945(a)(1). In this case, the ALJ determined that Plaintiff retains the RFC "to perform a full range of work at all exertional levels" with the following non-exertional limitations:

> The claimant is able to understand, remember, and carry out simple instructions and make commensurate work related decisions, but not at a production rate pace and in a work environment with few changes. He may have occasional interaction with supervisors, co-workers and the public. He is able to maintain concentration, persistence and pace for 2 hours at a time during the 8 hour workday with normal breaks.

*AR* at 13. As Plaintiff has no past relevant work under the regulations, the ALJ skipped Step Four. At Step Five, relying upon the testimony of a vocational expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that

Plaintiff can perform despite his limitations. Specifically, the ALJ determined that Plaintiff maintains the RFC to work as a Cleaner (DOT number 381.687-018), Cleaner and Polisher (DOT number 709.687-010), or Dishwasher( DOT number 318.687-010). *AR* at 18. Accordingly, the ALJ determined that Plaintiff is not disabled, and denied benefits. *AR* at 18.

### III. Legal Standard

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). However, in making this determination, this Court "cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016) (citation omitted).

### IV. Analysis

Plaintiff asserts that the ALJ's RFC finding was flawed because he failed to properly evaluate the opinions of Donald Gucker, Ph.D., Eligio Padilla, Ph.D., and John Owen, Ph.D. The Court addresses each in turn.

#### *A) Dr. Gucker*

After reviewing Plaintiff's medical records, Dr. Gucker provided a non-examining medical source opinion on March 5, 2014. In providing this opinion, Dr. Gucker filled out a Mental Residual Functional Capacity Assessment ("MRFCA"). *See AR* at 114-17. The MRFCA is a form used by the Social Security Administration, which is broken up into

4

three sections. *See* POMS DI 24510.060. "Section I is for recording summary conclusions derived from the evidence in the file and directs that detailed explanation of the degree of limitation for each category is to be recorded in Section III." *Carver v. Colvin*, 600 F. App'x 616, 618 (10th Cir. 2015) (unpublished) (internal quotation marks omitted).[3] The purpose of Section III is to state, among other things, "[t]he **extent** to which the individual **can** still **perform** and **sustain** specific mental activities and mental functions." POMS DI 24510.061 (emphasis in original). Thus, "[i]t is the narrative written by the psychiatrist or psychologist in Section III that adjudicators are to use in the assessment of RFC." *Carver*, 600 F. App'x at 619 (citation omitted); *see also Nelson v. Colvin*, 655 F. App'x 626, 628 (10th Cir. 2016) (unpublished) (citing POMS, DI 25020.010 B.1). However, "if a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Carver*, 600 F. App'x at 619.

In Section I of Plaintiff's MRFCA, Dr. Gucker assessed certain marked and moderate limitations on Plaintiff's abilities. *AR* at 115-16. Dr. Gucker then summarized his Section III findings as follows:

---

[3] It appears that the consultants did not use the same MRFCA forms discussed in *Carver v. Colvin*, 600 F. App'x 606 (10th Cir. 2015) (unpublished), which relied on POMS DI 24510.060. However, the MRFCA forms used in this case contain the same rating system and four general categories of limitations as special Form SSA-4934-F4-SUP and directed the consultants to discuss Plaintiff's mental capacities in narrative form. Thus, the MRFCA form is sufficiently analogous to special Form SSA-4734-F4-SUP to allow the Court to determine whether, in consideration of POMS DI 24510.060, the specific psychological limitations at issue should have been included in the RFC. *See Vanvakerides v. Colvin*, CIV 14-0879 SCY, Doc. 25 at 11 (D.N.M. April 7, 2016).

5

> Based on mental issues only, when treatment compliant and substance free, claimant retains the capacity to understand, remember, and carry out simple instructions, attend and concentrate sufficient to complete a routine work day without significant psychologically-based symptoms; exercise reasonable judgment; interact appropriately with coworkers; supervisors and the general public on an incidental basis.

*AR* at 117. Plaintiff argues that Dr. Gucker's Section III finding "does not address the moderate limitations in the ability to maintain regular attendance, be punctual, work without the need for special supervision, respond appropriately to work setting changes, set realistic goals, or make plans independently of others." *Doc. 24* at 2.

The Plaintiff in *Carver* made a similar argument, which the Tenth Circuit rejected. There, the medical consultant found a Section I moderate impairment on the plaintiff's ability to accept instructions and respond appropriately to supervisor criticism. *Carver*, 600 F. App'x at 619. The Tenth Circuit held that this impairment was adequately encompassed in the provider's Section III finding that the plaintiff could relate to supervisors and peers on a superficial work basis and in a work scenario involving only simple tasks with routine supervision. *Id.* The Court reaches the same result here.

As to Plaintiff's impaired ability to maintain regular attendance, be punctual, and work without the need for special supervision, Dr. Gucker found that he "retains the capacity to . . . attend and concentrate sufficient to complete a routine work day without significant psychologically-based symptoms[.]" While this Section III finding may not appear to be *specifically* targeted at these Section I limitations, it must be remembered that all of the individual limitations at issue come from a section of the MRFCA wherein the provider is asked to "rate the individual's sustained concentration and persistence limitations." *See AR* at 115; *see also Smith v. Colvin*, No. 15-CV-02563-RBJ, 2016 WL 7029835, at *4 (D. Colo. Dec. 2, 2016) ("These limitations both fall under the umbrella of

6

'persistence' restrictions."). This section of the MRFCA concerns "[t]he individual's ability to sustain ongoing mental performance for a full workday[.]" *See* POMS DI 24510.061 (B)(2)(a). Thus, Dr. Gucker's Section III conclusion addressed the moderate concentration and persistence limitations he found in Section I by finding that Plaintiff retains the capacity to complete a full workday, despite those limitations. *See Arguello v. Berryhill*, No. 15-CV-02392-REB, 2017 WL 514058, at *4 (D. Colo. Feb. 8, 2017) (finding that an evaluator's "conclusion that plaintiff could sustain ordinary work routines and adapt to work-related situations address[ed]" moderate limitations in the "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."). As other courts have found, it is "significant that after considering these specific limitations, Dr. [Gucker] nonetheless noted that [Plaintiff's medical records] reflected adequate persistence and pace." *Smith*, 2016 WL 7029835, at *4.

A similar rationale applies to Plaintiff's limitations on his ability to respond appropriately to changes in the work setting and set realistic goals or make plans independently of others. These limitations come from an area of the form entitled "adaptation limitations." *AR* at 116. "Adaptive functions reflect the individual's ability to integrate other areas of functioning." POMS DI 24510.061. Thus, "[t]he items in this section pertain to the individual's ability to: plan, respond to changes, deal appropriately with mental demands (stress), avoid hazards and maintain safe behavior, follow rules, adhere to schedules and to time constraints, and travel." POMS DI 24510.061(B)(4)(A). While he recognized that Plaintiff has moderate limitations in certain areas of

7

adaptation, Dr. Gucker's Section III narrative reflects that Plaintiff retains the capacity to "exercise reasonable judgment" in the work setting. *AR* at 117. This Section III finding is consistent with the moderate limitations found in Section I because even an individual who is moderately limited in his ability to respond appropriately to changes in the work setting and set realistic goals or make plans independently of others is capable of exercising "reasonable" judgment.[4]

Thus, Dr. Gucker's additional explanation addressed the moderate limitations he identified, and the ALJ did not err by giving "great weight" to his opinion.

Shifting his focus away from Dr. Gucker, Plaintiff argues that the ALJ erred by failing to address "the assessed limitations in working within a schedule, being on time, working without supervision, and setting realistic goals and making independent plans" as stated in Section I of Dr. Gucker's opinion. *Doc. 22* at 6.[5] However, in light of the Court's finding that Dr. Gucker's Section III narrative adequately encompassed these Section I limitations, the ALJ's formulation of Plaintiff's RFC was only required to reflect the MRFCA's conclusions. *See Smith*, 821 F.3d at 1269; *Nelson*, 655 F. App'x at 629. If the ALJ's RFC is compared with Dr. Gucker's MRFCA it reflects those limitations he identifies and is arguably more restrictive. *Compare AR* at 13 *with AR* at 117. Accordingly, the Court reject's Plaintiff's argument that "[t]he ALJ failed to related his RFC finding to Dr. Gucker's opinion[.]" *Doc. 24* at 3.

---

[4] *See* REASONABLE, Black's Law Dictionary (10th ed. 2014) ("Fair, proper, or moderate under the circumstances; sensible[.]").

[5] Plaintiff also argues that the ALJ "failed to explain why he limited Mr. Maldonado to occasional interaction with the public when Dr. Gucker assessed an ability for incidental interaction." *Doc. 22* at 5. However, Plaintiffs abandons this argument in his Reply brief because he recognizes that all three of the occupations adopted by the ALJ at Step Five "include no contact with the general public." *Doc. 24* at 2.

8

Plaintiff finally contends that the ALJ misinterpreted Dr. Gucker's opinion because "Dr. Gucker limited Mr. Maldonado to simple work, not unskilled work." *Doc. 24* at 3. This argument fails for two reasons. First, the ALJ did not limit Plaintiff's RFC to unskilled work, he limited Plaintiff to "carry[ing] out simple instructions and mak[ing] commensurate work related decisions[.]" *See AR* at 13. Thus, the ALJ parroted Dr. Gucker's Section III finding that Plaintiff "retains the capacity to understand, remember, and carry out simple instructions." *AR* at 117. Second, even assuming *arguendo* that the ALJ had limited Plaintiff to unskilled work rather than simple work, Plaintiff does not explain why this limitation would not comport with Dr. Gucker's findings. *See Vigil*, 805 F.3d at 1204 (noting that unskilled work only requires understanding, remembering and carrying out simple instructions and making simple work-related decisions (quoting SSR 96–9p, 1996 WL 374185, at *9)); *Nelson*, 655 F. App'x at 629 ("by limiting Ms. Nelson to unskilled work, the ALJ effectively accounted for all the limitations noted in Section I of Dr. Taber's evaluation."). In other words, even if the ALJ had misinterpreted Dr. Gucker's opinion and restricted Plaintiff to "unskilled" rather than "simple" work, that error would not affect the Court's conclusion that the ALJ correctly evaluated and applied Dr. Gucker's opinion in evaluating Plaintiff's case.

### B) Dr. Padilla

Dr. Padilla performed a consultative psychological evaluation of Plaintiff on March 22, 2010, at the administration's request. *See AR* at 347. Dr. Padilla's opinion is therefore considered an "examining medical-source opinion." *Ringgold v. Colvin*, 644 F. App'x 841, 843 (10th Cir. 2016) (unpublished) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012); 20 C.F.R. §§ 404.1527(c)(1); 416.927(c)(1)). Such opinions are

entitled to more weight than a doctor's opinion derived from a review of the medical record and are given "particular consideration" under the regulations. *See id.* Dr. Padilla diagnosed Plaintiff with Depressive Disorder NOS, Attention-Deficit/Hyperactivity Disorder, Primarily Inattentive Type Communication Disorder NOS, and Borderline Intellectual Functioning. *AR* at 352. Additionally, Dr. Padilla assessed Plaintiff with certain marked and moderate limitations. *AR* at 353. The ALJ gave Dr. Padilla's findings "limited" weight because "it is an older report generated prior to [Plaintiff's] filing date" and because he found some of the limitations assessed by Dr. Padilla to be "inconsistent with the updated evidence of functioning." *AR* at 16. Plaintiff argues that these two reasons were insufficient to discount Dr. Padilla's opinion. *Doc. 22* at 7.

The Court disagrees. "An ALJ must give 'give consideration to all the medical opinions in the record and discuss the weight he assigns to such opinions.'" *Vigil*, 805 F.3d at 1201-1202 (quoting *Keyes-Zachary*, 695 F.3d at 1164). When assessing a medical opinion, the ALJ must consider the factors listed in 20 C.F.R. § 416.927(c) and give good reasons for the weight he assigns to the opinion. *See id.* These factors include:

> (1) the examining relationship between the medical source and the claimant; (2) the treatment relationship between the source; (3) the supportability of the source's findings; (4) the consistency of the source's opinions "with the record as a whole"; (5) the source's status as a specialist, if applicable; and (6) other factors that tend to support or contradict the opinion.

20 C.F.R. § 416.927(c)(1)-(6). Importantly, "not every factor for weighing opinion evidence will apply in every case." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting SSR 06–03p). Thus, an "ALJ need not explicitly discuss all the factors if his decision is 'sufficiently specific to make clear to any subsequent reviewers the

10

weight he gave to the medical opinion and the reasons for that weight.'" *Rivera v. Colvin*, 629 F. App'x 842, 844 (10th Cir. 2015) (unpublished) (quoting *Oldham*, 509 F.3d at 1258)).

The ALJ's first reason for discounting the opinion – its age – fits within final category: that is, other factors which tend to contradict the opinion. While Plaintiff takes issue with this reason, he cites nothing indicating it was improper. To the contrary, common sense dictates that an older opinion ought generally to give way to a more recent one, especially where the opinions are both from consultative examiners who only evaluated Plaintiff on one occasion. *See, e.g. Adams v. Comm'r of Soc. Sec. Admin.*, No. 1:13-CV-01788, 2014 WL 4594738, at *10 (N.D. Ohio Sept. 15, 2014) ("consistent with the regulations, the ALJ considered and sufficiently explained that he was affording "little weight" Dr. Birney's opinion because of the age of the opinion as well as the lack of supportability and consistency of Dr. Birney's opinion with new and material evidence.").

The ALJ's second and related reason for discounting the opinion – that it was "inconsistent with the updated evidence of functioning" – is also supported by the record. Immediately after discussing Dr. Padilla's opinion and deciding that he would afford it limited weight, the ALJ addressed Dr. Owen's 2014 opinion, effectively comparing the two. *See AR* at 16. The ALJ summarized Dr. Padilla's findings as to Plaintiff's limitations as follows: "Dr. Padilla determined that claimant exhibited marked to moderate limitations with understanding and remembering instructions; sustained concentration and task persistence; social interactions and adaptation." *AR* at 16; *see AR* at 353. The ALJ then compared these limitations with those assessed by Dr. Owen:

> Dr. Owen opined the claimant exhibited only 'mild to moderate' difficulty remembering very short and simple instructions; carrying out instructions and interacting with supervisors. Dr. Owen further opined he had moderate difficulty with understanding and remembering detailed or complex instructions; attending and concentrating; persisting at tasks; ability to work without supervision and adapting to changes in the workplace. Lastly he opined the claimant had moderate to marked difficulty with interacting with the public; interacting with coworkers and the ability to use public transportation.

*AR* at 16; *see AR* at 435. Given that Plaintiff's functioning improved between Dr. Padilla and Dr. Owen's opinions, the ALJ permissibly discounted Dr. Padilla's on the ground that it was inconsistent with Dr. Owen's more recent opinion.

Moreover, throughout the ALJ's RFC formulation he discussed Plaintiff's functioning as reflected in Plaintiff and his mother's testimony, treatment records, and function reports. As with Dr. Owen's opinion, the ALJ could permissibly conclude that this evidence reflected a higher degree of functioning on Plaintiff's part than Dr. Padilla found. For example, the ALJ summarized Plaintiff's mother's testimony as follows:

> She stated the claimant lives with her and is her paid caregiver. He has been her caregiver for a year. He throws out the trash, vacuums, sweeps, prepares her meals and drives her to appointments or stores. He assists her with getting up from her bed and from her chair. . . .

*AR* at 14. The ALJ continued by summarizing Plaintiff's function report:

> Function Reports maintain the claimant engages in personal care, eats breakfast, watches television and plays with his children. He is able to prepare simple meals, clean and do laundry. He is able to go out alone and drive a car. He can pay bills and count change. He attends doctor appointments. He has difficulty following written instructions, but is able to follow spoken instructions. . . .

*AR* at 15. After reviewing this evidence the ALJ concluded that

> It appears that despite his alleged impairments, he has engaged in a somewhat normal level of daily activity and interaction. The physical and mental capabilities required to performing (sic) many of the tasks described above as well as the social interactions replicate those

12

> necessary for obtaining and maintaining employment. Moreover, the claimant is apparently able to care for young children at home, which can be quite demanding both physically and emotionally, without any particular assistance.
>
> Furthermore, driving a motor vehicle by himself, demonstrates that the claimant has the physical ability to operate a vehicle and that he has the mental capacities to comply with the applicably traffic regulations, and to remember the directions to and from his desired locations.

*AR* at 15. The Court finds no fault with these conclusions, and they could permissibly be used by the ALJ to discount Dr. Padilla's findings. Finally, the ALJ could also properly discount Dr. Padilla's findings on the basis "that none of the claimant's treating physicians[] has indicated that he is unable to work, is limited to a degree that is more restrictive than the residual functional capacity, or even that he has *any* work related functional limitations." *AR* at 15.

In sum, the Court finds that substantial evidence supports the ALJ's decision to discount Dr. Padilla's opinion, and will not reverse the ALJ on that ground.

### C) *Dr. Owen*

Like Dr. Padilla, Dr. Owen performed a consultative psychological examination of Plaintiff at the Administration's request. *See AR* at 433. The examination occurred on February 19, 2014, and included a Mini-Mental State Examination, which assesses cognitive impairment. *AR* at 433. As the ALJ notes, Plaintiff scored a 27 out of a maximum of 30 points on the Examination. *AR* at 434. The ALJ gave "significant weight" to Dr. Owen's opinion due to Plaintiff's score on the Examination. *AR* at 16.

Among other things, however, Dr. Owen assessed Plaintiff with a moderate to marked difficulty in his ability to interact with the public and co-workers and moderate difficulties in the areas of concentration and task persistence. *AR* at 435. Nevertheless,

13

the ALJ went on to find that Plaintiff's "Function Reports and other evidence indicate functioning is somewhat better than assessed." *AR* at 16. Thus, while the ALJ gave significant weight to Dr. Owen's opinion, he implicitly discounted it to the extent that it is inconsistent with Plaintiff's RFC.

Plaintiff argues that, despite giving Dr. Owen's opinion significant weight, the ALJ "failed to explain why he only limited Mr. Maldonado to occasional interaction with the public where Dr. Owen assessed a marked limitation. . . . He also did not explain why he found no limitation in the ability to maintain concentration and persistence when Dr. Owen assessed moderate limitations in those areas. . . . He also again failed to address the limitation on the ability to work without supervision." *Doc. 22* at 8 (citations to the record omitted). For these reasons, Plaintiff argues that the ALJ failed to comply with SSR 96-8p. *Doc. 22* at 8.

Arguably, however, SSR 96-8p actually supports the ALJ's analysis. Pursuant to it, "[t]he RFC assessment must always consider and address medical source opinions . . . [and i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184 at *7. Here, assuming that the ALJ's formulation of Plaintiff's RFC conflicted with Dr. Owen's opinion,[6] he provided a reason for deviating from it – because Plaintiff's

---

[6] The Commissioner argues that the RFC "is generally consistent with Dr. Owen's opinion as it accounts for the opined limitations," but then goes on to concede that Dr. Owen's finding of a marked limitation on the ability to interact with the general public is "arguably inconsistent with the RFC." *Doc. 23* at 10. The Court's analysis assumes without deciding that the RFC is inconsistent with Dr. Owen's opinion. As discussed later in this opinion, however, the Court agrees that any argument premised upon this alleged inconsistency would be "academic because the actual jobs offered by the vocational expert do not involve interaction with the public." *Doc. 23* at 10; *see AR* at 62 (where the vocational expert explains that "the middle three numbers of the DOT's for each of the three jobs, 687, suggests that the individual is working independently with occasional contact or very little contact with the public.").

Function Reports and other evidence in the record "indicate that functioning is somewhat better than assessed" by Dr. Owen. *AR* at 16. Although the ALJ could have provided greater specificity as to which evidence and Function Reports on which he relied for this proposition, the failure to do so in this case does not require reversal or remand.

As noted above, the ALJ expressly considered Plaintiff's function reports and his as well as his mother's testimony in reaching the conclusion that "despite his alleged impairments, [Plaintiff] has engaged in a somewhat normal level of daily activity and interaction." *AR* at 15. Indeed, the ALJ expressly noted that Plaintiff reported to Dr. Owen he did well during his year-long employment as a night janitor. AR at 16. It was therefore permissible for him to discount Dr. Owen's opinion to the extent that it was more restrictive than Plaintiff's RFC. *See* 20 C.F.R. § 416.927(c)(4) ("Consistency. Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

Finally, to the extent that the RFC could be seen as inconsistent with Dr. Owens' finding of a moderate to marked difficulty in interacting with the public and co-workers, all three jobs identified by the Vocational Expert do not require interaction with the public and involve the least level of interaction with people (Code 8). *See* DOT 381.687-018 (Cleaner), DOT 709.687-010 (Cleaner and Polisher), and DOT 318.687-010 (Dishwasher).

## V.    Conclusion

Plaintiff has failed to demonstrate that the ALJ committed reversible error in this case.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion to remand (*Doc. 22*) is **denied**. The Court will enter a Final Order pursuant to Rule 58 of the Federal Rules of Civil Procedure dismissing this action with prejudice.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent